**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Mark and Susannah Livingston
Revocable Trust, et al.,

                Plaintiffs,

vs.

Liberty Insurance Corporation, et al.,

                Defendants.

No.  CV-21-01367-PHX-SPL

**ORDER**

Before the Court is Plaintiffs Mark and Susannah Livingston Revocable Trust ("Livingston") and Tempel Roofing, Inc.'s ("Tempel") (collectively, "Plaintiffs") Motion for Hearing/Ruling on Discovery Dispute (Doc. 59) in which Plaintiffs move the Court to set a hearing or issue a ruling regarding Defendant Liberty Insurance Corporation's ("Defendant") apparent refusal to comply with written discovery requests. The Motion has been fully briefed and is ready for review. (Docs. 59, 62, and 64). For the following reasons, the Court grants Plaintiffs' Motion in part.

I.  **BACKGROUND**

Plaintiff Livingston was insured by Defendant for the period of March 20, 2019 through March 20, 2020 in the amount of $508,700 for the loss to the dwelling located at 5225 N. 43rd Pl., Phoenix, Arizona (the "Property"). (Doc. 1-3 at 3). In August and September 2019, the Property's wood shake roof and patio ceiling sustained damage during a series of storms. (*Id.*). In late September 2019, Livingston filed a storm damage claim with Defendant. (*Id.*). This apparently led to a series of disputes between the parties as to

whether there was storm damage, what caused the damage, and the cost of the repairs. (*Id.* at 3–4). Defendant retained Rimkus Consulting Group, Inc. ("Rimkus") to perform an inspection of the Property. (*Id.* at 4). On or about January 6, 2020, Rimkus issued a report claiming that there was no storm damage to the Property. (*Id.*). Relying on that report, Defendant denied Livingston's claim. (*Id.* at 5).

The parties agreed to submit the disputed claim to appraisal for a determination, pursuant to the policy's appraisal provision. (*Id.*). On July 2, 2020, as part of the appraisal process, umpire Anthony Ramirez inspected the roof and found that the roof needed replaced, that the drywall on the ceiling of the back patio had water damage, and that the estimate written by Livingston's appraiser was "consistent with the damage observed." (*Id.*). An Appraisal Award was entered in favor of Livingston, but Defendant declined to pay the award because it continued to dispute coverage. (*Id.*). On or about June 29, 2021, Plaintiffs filed a Complaint in state court, asserting breach of contract and bad faith claims as a result of Defendant's failure to pay the Appraisal Award. (*Id.* at 6–8). Livingston had apparently already signed a contract with Tempel to repair the roof but lacked the finances to pay for the repairs given Defendant's refusal to pay the Appraisal Award. (*Id.* at 5). As a result, Livingston assigned his breach of contract claims against Defendant to Tempel, explaining Tempel's inclusion as a Plaintiff in this suit. (*Id.*). On August 6, 2021, Defendant removed the matter to this Court. (Doc. 1).

The parties now allege a discovery dispute concerning Defendant's apparent refusal to comply with certain written discovery requests propounded by Plaintiffs. Specifically at issue are two non-uniform interrogatories ("NUI 3" and "NUI 4") and three requests for production ("RFP 2," "RFP 4," and "RFP 6") that Plaintiffs served on Defendant in late 2021 and that Defendant objected to, refused to answer, and otherwise declined to comply with. (*See* Defendant's Answers to Plaintiffs' First Set of Non-Uniform Interrogatories and Requests for Production of Documents, Doc. 59-1 at 2–11).

///

///

1

## II.    LEGAL STANDARD

2      The purpose of discovery is to make trial "less a game of blind man's bluff and more

3   a fair contest with the basic issues and facts disclosed to the fullest practicable extent

4   possible," *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958), and "to narrow

5   and clarify the basic issues [in dispute] between the parties." *Hickman v. Taylor*, 329 U.S.

6   495, 501 (1947). Necessarily, the scope of discovery is generally very broad. Under Rule

7   26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is

8   relevant to any party's claim or defense and proportional to the needs of the case." Fed. R.

9   Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in

10  evidence to be discoverable." *Id.*

11     "[T]he party seeking to compel discovery has the initial burden of establishing that

12  its request satisfies the relevancy requirements of Rule 26(b)." *Doe v. Swift Transp. Co.,*

13  *Inc.*, No. 2:10-cv-00899 JWS, 2015 WL 4307800, at *1 (D. Ariz. July 15, 2015). This is

14  "a relatively low bar," *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D.

15  Ariz. 2020), as relevance in the discovery context is "defined very broadly." *Equal Emp.*

16  *Opportunity Comm'n v. Scottsdale Healthcare Hosps.*, No. CV-20-01894-PHX-MTL,

17  2021 WL 4522284, at *2 (D. Ariz. Oct. 4, 2021) (quoting *Garneau v. City of Seattle*, 147

18  F.3d 802, 812 (9th Cir. 1998)); *see also Cont'l Cirs.*, 435 F. Supp. 3d at 1018–19 (citation

19  and internal quotations omitted) ("[C]ourts generally recognize that relevancy for purposes

20  of discovery is broader than relevancy for purposes of trial."). Under Rule 401 of the

21  Federal Rules of Evidence, information having "any tendency" to make a fact in dispute

22  "more or less probable" is relevant. Fed. R. Evid. 401. If the movant meets its burden of

23  establishing relevancy, "the party opposing discovery has the burden to demonstrate that

24  discovery should not be allowed due to burden or cost and must explain and support its

25  objections with competent evidence." *Doe*, 2015 WL 4307800, at *1.

26  ///

27  ///

28  ///

## III.   **DISCUSSION**

The parties dispute whether Defendant was justified in its refusal to answer or to otherwise comply with five written discovery requests propounded by Plaintiffs:

> (i) Non-Uniform Interrogatory Number 3 ("NUI 3");
>
> (ii) Request for Production 2 ("RFP 2");
>
> (iii) Request for Production 4 ("RFP 4");
>
> (iv) Non-Uniform Interrogatory Number 4 ("NUI 4"); and
>
> (v) Request for Production 6 ("RFP 6").

(Doc. 59 at 2–3). The Court will first address the parties' dispute with respect to NUI 3 and RFP 2 before turning to their dispute concerning NUI 4 and RFP 6. Finally, the Court will address RFP 4, which Defendant has agreed to comply with upon this Court's entry of a protective order. (*See* Doc. 62 at 8).

### A.  NUI 3 and RFP 2

In NUI 1—which is not at issue on this Motion—Plaintiff requested that Defendant identify the policy number and claim number for "every homeowner casualty claim which was filed with [Defendant] in Arizona within the last three (3) years." (Doc. 59-1 at 4). Although there is no dispute with respect to NUI 1, the disputed NUI 3 specifically refers to the request made in NUI 1:

> NUI 3: With respect to the claims identified in NUI 1 above, please identify by policy number and claim number, any claim that has gone to [appraisal] pursuant to the terms of the policy.

(*Id.* at 6). In other words, NUI 3—when read in conjunction with NUI 1—requests that Defendant identify the policy and claim numbers for every homeowner casualty claim that (i) was filed with Defendant in Arizona, (ii) within the last three years, and (iii) that went to appraisal pursuant to the terms of the policy. (*Id.*). RFP 2 further requests that Defendant produce the appraisal award for each claim identified in NUI 3. (*Id.*).

To start, the Court has little difficulty concluding that the information requested by NUI 3 and RFP 2 is sufficiently relevant to Plaintiffs' bad faith claim, at least for purposes

of discovery. Under Arizona law, an insured alleging a bad faith claim must prove two elements: (1) that the insurer acted unreasonably and (2) that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable. *Jones v. Colo. Cas. Ins. Co.*, No. CV-12-01968-PHX-JAT, 2015 WL 1806726, at *5 (D. Ariz. Apr. 21, 2015) (citations omitted). The first element involves an objective reasonableness test while the second calls for a subjective test, "requiring the plaintiff to show that the defendant insurance company committed consciously unreasonable conduct." *Milhone v. Allstate Ins. Co.*, 289 F. Supp. 2d 1089, 1094 (D. Ariz. 2003) (citation omitted). In this case, Plaintiffs allege that Defendant's failure to pay covered damages and the Appraisal Award was unreasonable and that Defendant knew or recklessly disregarded the fact that it was unreasonable. (Doc. 1-3 at 7–8). To prove intent, Plaintiffs seek discovery of previous instances in which homeowner casualty claims were filed with Defendant, Defendant invoked the appraisal process, and Defendant subsequently failed to honor the Appraisal Award. (Doc. 59 at 6). The Court agrees with Plaintiffs that such previous instances are relevant because the fact that Defendant acted similarly with respect to previous claims tends to make it more probable that Defendant was aware of the unlawfulness of its conduct and that its decision to engage in such conduct anyway was intentional.

Defendant cites to several non-Arizona cases in which courts held that other insurance claims are irrelevant and not discoverable. (Doc. 62 at 3–4). Arizona courts, however, have explicitly recognized that, in the context of a bad faith insurance claim, "[e]vidence of previous, similar acts alters the probability that the conduct in question was unintentional; the more frequently an act occurs, the more probable it is intentional." *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 498 (1987); *see also State Farm Mut. Auto. Ins. Co. v. Super. Ct. In & For Cnty. of Maricopa*, 167 Ariz. 135, 138 (Ct. App. 1991) (recognizing *Hawkins*' holding "that information regarding how an insurance company handles other claims is admissible if it is sufficiently similar to the insured's experiences to show a pattern of claims handling."); *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238 (2000) (citing to *Hawkins* for the proposition that "past practices [are] relevant

and admissible"). Thus, Arizona courts appear to allow the discovery of information related to other claims filed with the insurer, so long as the request is appropriately narrow in scope and the other claims are "sufficiently similar" to the insured's experiences such that they become relevant to the issue of intent. *See State Farm Mut. Auto. Ins. Co.*, 167 Ariz. at 138. Here, the Court finds that previous homeowner casualty claims filed with Defendant in Arizona—where the claim went to appraisal and where Defendant declined to honor the Appraisal Award—are sufficiently similar to the experiences of Plaintiffs in this case and serve as at least some evidence going to the intent element of Plaintiffs' bad faith claim. Thus, Plaintiffs' discovery requests in NUI 3 and RFP 2 seek relevant, discoverable information that should be permitted.

Defendant also argues that Plaintiffs' requests in NUI 3 and RFP 2 are "vastly overbroad" because they are "unlimited in time, geographic area or cause of loss." (Doc. 62 at 3). The Court rejects this argument outright, as Plaintiffs' requests in NUI 3 and RFP 2 are limited temporally (only those claims filed within the last three years), geographically (only those claims filed in Arizona), and with respect to type of claim or cause of loss (only those claims that are homeowner casualty claims). If that were not enough, Plaintiffs *also* limit their request to only those claims which went to appraisal and in which Defendant declined to honor the Appraisal Award. (Doc. 59 at 6 ("[A]ny Arizona homeowner casualty claims filed with Defendant during the last three years in which the carrier forced the insured to go through the appraisal process and then failed to honor the Appraisal Award is relevant.")). Finally, Plaintiffs' requests are also limited in that they only request the policy numbers, the claim numbers, and the appraisal award for each claim identified. In sum, the Court finds that Plaintiffs' requests in NUI 3 and RFP 2 are sufficiently narrow and proportional to the needs of this case.

The Court will grant Plaintiffs' request that this Court compel Defendant's compliance with NUI 3 and RFP 2. Defendant is ordered to identify, by policy and claim number, any homeowner casualty claim filed in Arizona within the last three years and in which the claim went to appraisal pursuant to the policy and in which Defendant ultimately

declined to honor the Appraisal Award. In accordance with RFP 2, Defendant shall also provide the appraisal award for each such case they identify.

**B. NUI 4 and RFP 6**

In NUI 4, Plaintiffs request that Defendant "identify by claim number every matter [Defendant] has retained Rimkus Consulting Group Inc. on to prepare a roof report/cost of repair." (Doc. 59-1 at 8). Relatedly, RFP 6 requests that Defendant "produce the total amount of money that [Defendant] has paid Rimkus Consulting Group Inc. for its expert report(s)/opinion(s) or estimate(s) over the last five years, identified by year." (*Id.* at 9). Plaintiffs assert that such information is "highly relevant" to the credibility and bias of Rimkus Consulting Group Inc. ("Rimkus"). (Doc. 59 at 7). Plaintiffs argue that Rimkus is serving as a retained expert witness for Defendant in this case, and that Defendant should therefore be compelled to provide the requested discovery under Rule 26(a)(2)(B). (Docs. 59 at 8 & 64 at 4). In its Response, Defendant argues that Rimkus is a non-retained expert in this litigation and that Rimkus is therefore not required to comply with Rule 26. (Doc. 62 at 5). Even if Rule 26 *did* apply, Defendant argues that Plaintiffs' discovery requests in NUI 4 and RFP 6 seek irrelevant information and that the requests are overbroad such that compliance with them would be unduly burdensome. (*Id.* at 5–8).

"Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose the identities of each expert and, for retained experts, requires that the disclosure includes the experts' written reports." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing Fed. R. Civ. P. 26(a)(2)). Even if this Court were to assume that Plaintiffs are correct and that Rimkus is a retained expert in this matter, Plaintiffs' discovery requests in NUI 4 and RFP 6 are far broader in scope than what is required by Rule 26. Under Rule 26, a retained expert's written report must contain "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). Here, Plaintiffs' NUI 4 requests the claim number for *every matter* that Defendant has ever retained Rimkus on to prepare a roof report/cost of repair. (Doc. 59-1 at 8). Such a request is far broader than just those cases in

which Rimkus testified as an expert in the last four years. Similarly, a retained expert's written report must contain "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(vi). Here, Plaintiffs' RFP 6 requests "the total amount of money that [Defendant] has paid Rimkus . . . for its expert report(s)/opinion(s) or estimate(s) over the last five years, identified by year." (Doc. 59-1 at 9). Such a request is far broader than just the compensation Defendant paid for Rimkus' work in the present case.

Plaintiffs have failed to meet their burden of showing that the requested discovery in NUI 4 and RFP 6 is relevant and proportional to the needs of this case. Therefore, the Court will not compel Defendant's compliance with respect to those written discovery requests. To the extent Plaintiffs believe Rimkus is a retained expert in this matter and that Defendant's Rule 26(a)(2)(B) compliance is lacking, Plaintiffs should tailor their discovery request to the requirements of Rule 26—that is, Plaintiffs should be seeking a list of cases in which Rimkus has testified as an expert during the previous four years (rather than the claim numbers for every matter that Defendant has ever retained Rimkus on to prepare a roof report/cost of repair) and a statement of how Rimkus was compensated in *this case* (rather than the total money paid by Defendant to Rimkus in the last five years).

## C. RFP 4

In RFP 4, Plaintiffs ask Defendant to "produce any and all policies, procedures, manuals and/or performance guidelines which [Defendant] currently has in its possession regarding the adjustment of homeowner casualty claims." (Doc. 59-1 at 7). Defendant does not object to this request and states that it will "disclose the documents accordingly" provided that this Court enters a protective order. Consistent with this Court's July 7, 2022 Order (Doc. 49), Defendant is permitted to refile a Motion for Protective Order that includes a Proposed Protective Order that is sufficiently completed to allow this Court to rule on the issue.

///

///

## IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Hearing/Ruling on Discovery Dispute (Doc. 59) is **granted in part** to the extent Plaintiffs request an order compelling Defendant's compliance with **NUI 3** and **RFP 2**:

1.   In accordance with NUI 3, Defendant shall identify by policy number and claim number any homeowner casualty claim that was filed with Liberty in Arizona within the last three (3) years, that went to appraisal pursuant to the terms of the policy, and in which Defendant declined to issue the Appraisal Award.

2.   In accordance with RFP 2, Defendant shall produce the appraisal award for each matter referenced in Defendant's answer to NUI 3.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Hearing/Ruling on Discovery Dispute (Doc. 59) is **denied in part** to the extent Plaintiffs request an order compelling Defendant's compliance with **NUI 4** and **RFP 6**.

**IT IS FURTHER ORDERED** that the Court shall withhold any ruling with respect to **RFP 4**, as Defendant states that it will comply with RFP 4 subject to this Court's entry of a protective order. Consistent with this Court's July 7, 2022 Order (Doc. 49), the parties and/or Defendant shall have until no later than **September 26, 2022** to file a Motion for Protective Order. The parties and/or Defendant are advised that any Proposed Protective Order filed with the Motion must be complete and may not omit any information that would be relevant to this Court in ruling on the Motion. Namely, the Proposed Protective Order's exhibits may not be blank and must instead include the specific material at issue.

Dated this 13th day of September, 2022.

Honorable Steven P. Logan
United States District Judge